Good morning, Your Honor. Stephen Rohde for Lynn Davidson and Sandra Callender. To put it bluntly, unless this Court reverses the order dismissing the First Amendment complaint, the City of Culver City will have succeeded in preventing a full and fair challenge to the constitutionality of a seriously flawed sign scheme and without having given Ms. Callender and Ms. Davidson the opportunity to have full discovery and present relevant evidence on each of the issues. Now, I understand Ms. Davidson and Ms. Callender are separately situated. Ms. Davidson was whether she is collaterally estopped or by Raise Judicata. Now, Ms. Callender was not a party to that. Is that correct? That's absolutely right. This case must proceed in all respects with respect to Ms. Callender. She's an independent person. She had joined in the request to put up signs in advance of the November presidential election. She had standing and the case has to proceed. As far as Raise Judicata is concerned with respect to Ms. Davidson, in the first place the Court found Raise Judicata only as to the facial attacks on the ordinance. Fundamentally, the District Court in Davidson 1 had found that fixtures in the public right-of-way are non-public form, fixtures, the light poles, the utility poles. This is so important because that is parallel to the decision in Vincent which the city spent so much time relying on, but Vincent was about the utility poles, public property, not the public right-of-way. And if we could clear up once and for all that distinction between those fixtures and the full public right-of-way, first of all, Raise Judicata does not prevent Ms. Davidson from going forward. Why is it so clear that Davidson 1 only dealt with utility poles and public property? Because that's exactly what the District Court found. You mean here in this case? Here, at page 14 of its order, this Court thrice concluded that the fixtures along the city right-of-way do not constitute a traditional public forum and have never been designated as a public forum by the city. In the first case, you're telling us that she never raised anything else but the fixtures? Her plan then, and as the early TROs, they were strapping these signs for get-out-the-vote to the utility poles. What about the allegations in the complaint? In the current complaint? No, in the first Davidson complaint. The first Davidson complaint generally pled that she was seeking the right to display her get-out-the-vote signs. But the way the case was litigated, and it only — in that case, only went to summary judgment, was with respect to the fixtures. And that was sustainable because Vincent — But the original claim was broad enough to encompass all of the public right-of-ways. Isn't that correct? But not in terms of the actual issues that were litigated for purposes of race judicata. Now the as-applied challenge, which really is, I would say, equally important to the by race judicata. The trial court never reached the as-applied challenge. It actually denied the city's summary judgment motion in Davidson 1 on the as-applied challenge. Let me ask you this. Why didn't you have some obligation? You know, in the prior case, there was a settlement. Yes. And part of that settlement, she got to be part of a community committee, a city council-appointed committee, had to study the laws. And one of the other features of that prior settlement was, you know, a remedy. Future disagreements. She could invoke — It wasn't — Mediation or whatever it was. Some sort of mechanism. It was hardly — And they could have resolved it that way. And they could have gone to the district court and had it enforced and all kinds of things. And instead, she files a new lawsuit. Well, here's why. We thought — I was counsel in Davidson 1. I was counsel here. We thought long and hard. Had the judgment in Davidson 1 been violated? And we concluded it had not been violated. And we didn't base Davidson 2 on a violation of Davidson 1. Davidson 2 had to address a new ordinance. It had to address a new scheme in which they claimed they were imposing a moratorium while approving and permitting other signs. So, Your Honor, we simply recognized that this was going to be a battle. As one case speaks of, the parties remained philosophically on a collision course. And we were free on the eve of the municipal election to file a new action and seek a temporary restraining order. So, although that mediation, that might have had us talking and going back and forth, it was not a prerequisite. It does not impair our right. What were the specific signs or manner of displaying for signs in Davidson 2? Davidson 2 was the same — I almost brought one to court. I don't know if that was proper — a placard, vote for a change. And it had a new place to show your polling booth and the directions to your polling booth. Where and how was it going to be displayed? They were going to be put on stakes in the grassy areas around trees. They were going to be placed without the stakes. They could have been placed on A-frames in the sidewalk. They could have been placed in the median of the public right-of-way. So a whole new case presented itself in Davidson 2. And if I fail, the one thing I want to be sure to get across is that prematurely, on a motion to dismiss, where unfortunately the district court accepted the invitation of the city to make factual findings on a motion to dismiss, we got caught in this box that eventually the district court chastised us for not making a showing. Plaintiffs fail to show that there is a long-standing practice or custom which constitutes the standard operating procedure of the local government. We were faulted because we made an allegation of discriminatory enforcement. The city on the temporary restraining order brings in their one-sided evidence that they are very vigorous. They are very deliberate in enforcing this statute. And the district court cites their evidence from the TRO on a motion to dismiss. We were on the eve of taking the deposition of the fellow who enforces the sign ordinance and the whole case had been dismissed. The trial court on a motion to dismiss says the city adduced credible evidence to the contrary that there had been discriminatory enforcement. This wasn't, we didn't have our fair shot. You're not supposed to convert a motion to dismiss into, at best, summary judgment without notice, an opportunity to complete discovery and to present evidence. But I won't urge this court, in addition, I hope, to reversing because the motion for 12b-6 was improvidently granted, but to go to the fundamental standard that needs to pervade this case if, in fact, we return to the district court. And that challenge. Is that right? Yes. I think she has been. Has the city acted against the plaintiffs? Plaintiffs? Yes. In other words, your position is the plaintiffs have, indeed, violated the terms and the city has already applied the prohibition against them? No. Under the standing analysis, as long as there is a definite and concrete dispute, there's a real threat that's not hypothetical or abstract. One doesn't have to await the consummation of the threatened injury, Babbitt says. What was the threat here? The threat was that they would... Davidson 2. Davidson 2, they would prohibit her signs while allowing other signs in the public right-of-way. And she specifically... Was there a ruling by the city that so said? Well, since we're in this de facto area, they didn't have a permit system. I listened carefully to the prior case. There wasn't a permit system. So what Davidson did is we applied to the city in April for both Calendar and Davidson to put up signs in advance of the November election. We did that in April of 2004. We laid out our... Signs to be posted on publicly-owned land or privately-owned land or both? Publicly-owned land. All publicly-owned land. Yeah, private. This case does not deal with private property. There are other factors there. All city-owned land. Exactly. And what we think... The strip of grass between the sidewalk and the road, that's considered public property, not owned by the homeowner. Right, exactly. And so are the median and those little tree, grassy areas around a tree or a pole. So... Also proposing, I gather from something you said, put up signs on sidewalks? Yes, because of the pattern we were saying is to the extent that the city allows sandwich board signs and other signs on the sidewalk, they obviously are not deeply concerned about the passage of pedestrians. We're willing to abide by any fair time, place, and manner that avoids blocking pedestrians. There's no goal of doing that here. But we should not be discriminated against and we should have the same signage rights that other people have had in the public right of way. I want to come to the standing issue that we had clearly framed it as a request to post the signs. Interestingly enough, the city has essentially conceded that it was futile. In their brief at answering brief 38, the city's request to post signs would inevitably be denied. The city could hardly be expected to affirmatively respond to such a contrived request for permission. That's a quote from the city's brief. So we think this case is squarely before you as far as standing is concerned, especially given First Amendment rules as they relate to standing, and that that's true of both Calendar and Ms. Davidson. Well, of course, there's a significant distinction in terms of those rules between as applied. I understand. And facial. Yes. The liberality applies more to facial challenges, but we don't think it's irrelevant and in the court's case in Canatella, there was both a facial and an as applied challenge and standing was found there. What I want to be sure to have said a moment ago is that public places have historically been associated with the free expression activities like streets, sidewalks, parks. And it is important, consistent with what this court said in ACLU versus City of Las Vegas, Venetian Casino, and all that history of cases going back to Hague and Cary and Grace and Frisbee. In this new case, I want to bring to your honor's attention Tucker versus City of Fairfield, Sixth Circuit case, which the U.S. Supreme Court denied cert on two weeks ago, 398 F3rd 457, where a red balloon in a, I'm sorry, a rat balloon in a labor strike was attached to the public right of way. There was a labor strike against a Ford dealership and it was found to be a structure, but the U.S. Supreme Court denied it as in ACLU and these other cases by first analyzing that the streets and sidewalks are a public forum. Only when you start the analysis that way can you heed Justice Kennedy's warnings and this court's warnings in ACLU versus Las Vegas that we not allow the public forum doctrine to convert what was once an analysis protective of expression into one which grants the government authority to restrict speech by fiat. And if indeed, as a matter of first instance, before you approach the second stage in the analysis, generally speaking, the public right of way in Culver City is a public forum, then this case changes drastically because then the district court has to make all of its judgments about the narrowness of the restriction and the least restrictive means and whether the government interest in visual clutter, when they're allowing the public right of way to be festooned with signs, all of that analysis will change if this case is returned to the district court with a finding that in the first instance this is a public forum rather than a non-public forum, which is what unfortunately the district court found. Your Honors, I am eager to reserve a little under five minutes for rebuttal, and I'd like to do that. Certainly. You may do so, Counselor. Thank you. We'll hear from the city. Ms. Fox. May it please the courts, Deborah Fox for the Culver City. And many times in these First Amendment cases we get weighty constitutional issues or we try to fill in the gray in the borders or the unresolved issues, but really in this case it's a functional equivalent of what occurred here in Culver City. A counsel is simply categorically wrong in his attempt to characterize Davidson One. Davidson One was about the public right of way. And I would offer and invite the court to take a look at the excerpts of record, the supplemental excerpt, tab one, the complaint for injunctive and declaratory relief by Ms. Davidson and Ms. Collender at SER008. And it talks and says there at line 17 to 20, in that action, talking about Davidson One, Davidson challenged the restrictions that the city had placed on the posting of signs, banners, and penance in the public right of way within Culver City. That's precisely the challenge we have here. The fact that perhaps plaintiff has thought of another fixture in the public right of way does not distinguish it, nor does it distinguish it away from Davidson One nor the Vincent case. But what did the court say in Davidson One? Similarly, if one... Was there a limited decision in any way, or did it broadly announce a rule covering all public forum? It broadly announced a rule, which is found again at the excerpts of record in 15, starting about talking about the public right of way. The case in Davidson One did morph over the years. Firstly, they talked about the posting of their vote for a change signs on utility boxes in the medians. Then later on, they talked about banners and penance that they wanted to hang both from the light poles and across the banners that stretch across the right of ways. So the entirety of the public right of way was discussed in Davidson One and decided in Davidson One.  No, it was not limited to fixtures. It was the entirety of the public right of way, whether you talk about the curb or the gutter or the median or the street itself, the streetscape in its entirety and the pertinence to it. Vincent, the argument to say that Vincent was simply about lampposts, I would offer, is again not true to the case. The case talks at footnote one about the whole milieu of the different fixtures that are found in the public right of way. It talks about sidewalks, hydrants, poles, etc. So I don't think there's any distinction that they can make between Vincent and the cover of cities regulation. As well, the comment was made that somehow we need to really look at ACLU versus Las Venetian Casino case and be careful about this public forum issue because it is undisputed that Judge Feist has found on at least four occasions that the city's public right of ways are not a public forum. And the cautionary language that's in ACLU, Judge Feist was on that panel, was the notion that you can't convert all these public right of ways. There you had the Fremont Street that was now being converted to a pedestrian only mall and a different kind of experience and revitalization. Similarly in the Venetian Casino, you had the situation where the sidewalk in front of the casino had been taken for widening for a roadway to improve traffic. And the court said, you know, we have to be very careful about this public forum issue here and look to the characteristics of the forum. I would offer, I think that Judge Feist... Well, you know, sidewalks and streets are the classic public forum. And you can impose time, place and manner restrictions, but they're entitled to the utmost scrutiny. That's true, but we do see in Metro Media that it does talk about the fact that the First Amendment issues are not fungible. The fact that people can protest and they can still do so in Culver City. And they can have parades, they can picket, they can leaflet on those public sidewalks. But there is not a necessarily similar analysis when you look to the issue of signs. And the case law talks about the fact you can't tell a sign to move, you're blocking my way. You can't have some discussion with a sign. You can't tell a sign, no, thank you, I don't want to view your message that you're trying to communicate to me. But I think in the case that was not cited in the briefs, I'd like to bring to the, invite to the Court's attention, Courier v. Potter, a Ninth Circuit case, 2004, at 379-Fed-3-7-16. Counsel, be sure and prepare a gum sheet to serve your opponent counsel and file a copy, three copies with the deputy clerk. Very good, Your Honor. That was the case where Judge O'Scanlan offered the opinion, offered the opinion and noted that the Supreme Court has resisted adding additional items into traditional public forum. In this particular case, there is no requirement that the city has to impose some sort of zone of silence. And I think that was a nice quote as well in a case called Hawkins v. The City and County of Denver, a Tenth Circuit case. And that's precisely what Ms. Davidson and Colander would have asked that the city to do in this particular instance. I think as well it is important to note the standing question. Ms. Colander does not have a concrete plan. And similarly, there has been no asserted enforcement towards her. Well, help us. You heard what Mr. Rohde said in describing the status of the process. Help us with what does the record show in terms of what these plaintiffs asked for and what the city did? Well, the record shows that they filed Davidson 2 on March 31st, 2004, and they hadn't asked the city for anything. So it was not until a month later, on April 29th, 2004, that they did send a letter. And we offer that, of course, that could not be granted. We do not allow those signs in the public right-of-way. But certainly, we had never had any prosecution actions against Ms. Colander. We think the Thomas case, along as well with the Ashcroft case, supports that she does not have standing. And an additional item that I've asked the Court, again, to take note of is the fact that the city has amended its sign ordinance. The Court took judicial notice of that new amendment that occurred on April 11th, 2005. And curiously, another comment was made during the hearing. Well, how would that affect this case? What's significant about that amendment? It certainly makes it moot as to, the whole case is moot, but particularly as to... Why is it moot? Because now you have a new ordinance. Well, what does the new ordinance do? Does the new, would the new ordinance allow the signs, this little A-frame sign? No, it would not. Or posting a, you know, a sign on a certain size in the grassy area? No, it would not. In certain locations? It would not do so. So what would it do for her? The way the sign code changed was there were two chapters. And we had the provisions in Chapter 13, which are not zoning, which were then amended by the new ordinance that took effect in the April of 2005. And in that particular instance, the reason I do think as well it moots the challenge, you'll recall, one of their concerns was said, we hadn't adopted, we'd imposed a moratorium, but in fact we hadn't adopted the amendments. And I'm sorry, I misspoke. In fact, the new ordinance in 2005 was the amendment to the zoning code, which is found in Chapter 37-78. But if it speaks to the same issues, what difference does it make? Well, it certainly is, the regulatory scheme has changed. So in fact, you know, when you look at the cases like the Mesquite case, Aladdin's Castle, we have a change in the statutory scheme. So it's really, this court would just be ruling in an advisory capacity on an issue that is now moot. But she still can't put up the signs, correct? That's correct. Would you address the question of whether the city's policy of granting and denying permits is content-based? The situation in the public forum is that indeed it is content-based. They allowed signs that are regulating traffic, signs that are indicating public facilities and identifications of places. And as we know, in a non-public forum, you are allowed to have that type of content-based issues. Now there has been no, and there is no evidence that in any of the other asserted illegal posted signs that content had been any factor in that. Indeed, most of them, if not all of those signs are either signs that are directional signs or signs that are illegally posted. And again, going to the issue which we talked about in our brief, is that we cannot open up a forum unless we do so intentionally. Illegal posting of signs that code enforcement may or may not have the opportunity to remove or to see does not rise to the level of a constitutional violation. Do you say that the public streets of the city are not the public forum? They are not the public, they are not public forum for the posting of signs. Well, but I thought something either is or is not a public forum and you don't have a public forum for the posting of signs and another public forum for making political speeches and another public forum for giving directions. As I understand it, it either is or isn't a public forum and if it is a public forum, then you have to see what can be limited and what cannot be limited. That's not the way I read Metro Media. I think Metro Media, in fact, gives us support for the proposition that a public forum, you look to the issue of the type of expression that is proposed, be it assembly, picketing, parading, or posting of signs and that they are not all fungible. Do you look at that to determine whether it's a public forum or whether the restriction is permissible in a public forum? I think a little of both. I think it's true that usually when you look at ACLU versus Las Vegas, they say that you look at those characteristics to determine if it is a public forum. But those cases generally are really looking at the sidewalks. They are not looking at the issue of the public right of way as a transportation mode and the consistency of it with signs and that's why, of course, Vincent is so useful in that regard. Do you say the sidewalks are not generally a public forum? No, I am not saying that. Obviously, we know that from case law. I assume you can get up on any sidewalk in your city and make a speech if I want to. That's correct and that's why Judge Fees, as well, in his order, also finds, he goes the next step. He not only finds it not to be a public forum, but even if you use the stricter analysis, he finds that indeed we have a sufficient governmental interest and that there are alternate avenues of communication. He talks about the fact that you can pick it, you can leaflet, etc. and accordingly. Let me ask you a question. If Judge Friedman was out there on your city streets, on city sidewalks, giving his speech, whatever it might be, and he had a little sign there with him, an A-frame sign, could you remove the sign? If the A-frame sign is on the public sidewalk, yes. Right next to him, right where he's standing there giving his speech and he has a little sign there. I'm holding it up in my, I have a sign on it with a little piece of wood on it and I'm holding it up and giving a speech. Can you tell me, you can keep speaking, but get that sign out of there? There is a distinction between the two examples that have been offered. The A-frame sign that's in the sidewalk is not, is prohibited. Stand-alone. Is that the difference? It is the difference and you can't tell that sign to move. You don't know who, you may not necessarily know who is attending that sign or not attending that sign and it may be blocking the public right-of-way. But a sign being carried by a picketer would not come within the prohibition of Judge Friedman. How about if Judge Friedman had a little table there next to him and he had his literature right there? Well, I. Could you tell him, okay, okay Judge, you give your speech, but fold up that table and box up those, those pieces of paper. Under the provisions of Chapter 13 that are at issue here in 37-78, we would, if it's in the public right-of-way, he would not be allowed to have the table. And what kind of scrutiny would you give to that kind of restriction? Well, the table, I may need to back step a moment. The table is. Well, that's not our case, but I don't. We had to remand that in ACLU versus Las Vegas, so I suppose I'm getting ahead of myself. Something that counsel didn't address, but I'm kind of curious about, you know, one of the issues that they appealed here was the district court's order of attorney's fees. The city asked for some hundred, over $100,000 in attorney's fees against Miss Davidson and the district court found that her complaint was completely frivolous and awarded 98,000, I think it was, or something like that. That's correct. Let me ask you this. Was there any, her co-plaintiff, apparently, you know, she wasn't burdened by any of this, these race judicata issues and whatnot. And the city, had Miss Davidson not joined in this case and in this calendar, is that her name, calendar, that she just litigated the case on her own, the city would have had to litigate that case, all the claims, everything, and it would be, I think the city would be in a hard position to argue that Miss Callender's case was frivolous. So why should Miss, why does Miss Davidson have to saddle the entire cost of the litigation? Well, first off, Miss Davidson wasn't saddled with the entire cost of the litigation. How much of this litigation was she saddled with? Well, she was saddled with the cost from after the determination on the TRO. And in that particular instance, the Court goes through a 30-year period. But I gather from that point on, the Court was still litigating issues related to Miss Callender. Well, they were certainly intertwined. So why should Miss Davidson, I don't understand why Miss Davidson should have to pay for that. Because certainly the city doesn't understand that it paid her over $300,000 in the stipulated judgment resolving those issues for all time and then has, again, the same issues put before it. So it seemed to me that only inherent that that was an abuse of not proceeding. Even though the city would have had to litigate against Miss Callender after that point, Miss Davidson still is stuck with those fees. Well, and I don't know that the city would have had to litigate with Miss Callender. I think we would have prevailed on the standing issues and the mootness issues. But that certainly is not how the case unfolded. I did want to offer that the comment was made as well on that stipulated judgment, that they made the determination that that had not been violated. But when you look at their amended complaint, they make the allegations that we did not comply with the Court's order. Those are part of the allegations. I find that stipulated judgment somewhat troubling in this case. But let me ask you one other question. I gather you do. I mean, you take the position that her complaint was completely frivolous. Yes. And without merit. Yes. Absolutely. Okay. Thank you. Thank you, Counsel. Mr. Rohde, you have some reserved time. I think we heard a lot of important concessions just now. We heard that the request of Callender and Davidson would not have been granted a clear judicial admission of counsel at oral argument. We do not allow those signs in the public right of way. I think that squarely presents this case for this Court's ruling and addresses the standing issue. They were not going to allow Lynn Davidson and Sandra Callender. She also, when Ms. Fox talks about it in the non-public forum analysis, she admits that the statute is content-based. She said that a few moments ago. However, without being overly patronizing or cloying, I agree with Judge Friedman that you first look at the forum, the public right of way as public streets and sidewalks, which are a public forum. Judge O'Scanlan's concerns were about adding to traditional public forums. But we're not adding. We are at the core of First Amendment protection on public streets. You start with that analysis, and then you would have to look at the proper standard to apply, whether it was narrowly tailored. The district judge never went to a strict scrutiny test. He said, OK, now I will further analyze the forum as a non-public forum, and he got into the reasonable test under non-public forum. Even there, the reasonable test is a factual test involving a lot of factors and should not have been disposed of on a motion to dismiss. Tabling, of course, was raised in ACLU versus Las Vegas. I want to be sure to have commented that this case hardly justifies any award of attorney's fees. This was a genuinely fought case with serious issues. We do not believe res judicata prevented Ms. Davidson addressing a new ordinance. It's sometimes overlooked in this case, the new ordinance allowed for news racks. When they quote the ordinance, there are five sections, and they renumbered them into two, three, and four, or three, four, and five. One allows news racks. And under FODI, a statute which even allows government speech is content-based and must go through the content-based analysis, which never happened in this case. Vincent was a specific case. Yes, Your Honor. What do you contend was a new claim that was not covered by Davidson 1?  However, they continued to approve and allow signs in the public right-of-way, which were functionally equivalent to Davidson signs. Directions to the mosque, directions to the Presbyterian church, announcements of commercial and non-commercial events. All of this was in the public right-of-way by the either approval process of the city or by its lax enforcement. Now, the court was very confident in accepting the city showing that they'd been vigorous in their enforcement. Well, I wanted to get their enforcement fellow in a deposition the next day, and I never got the chance to do that. And we should not have been precluded with an assertion by the city that their enforcement was highly appropriate. Much of what we heard are factual questions. The legal standard, what kinds of signs, whether they block a sidewalk. We haven't been able to bring, Your Honors, a full record that would show you what the nature of Culver City's sign regulations and use are. I'd like to, frankly, sitting in that side of the courtroom, be back here someday where a full record has been developed that this is a public forum and that the city has failed to enact adequate time, place, and manner regulations which are content neutral. Thank you very much. Thank you, Counsel. The case just argued will be submitted for decision.
judges: Friedman, O'scannlain, Paez